**Jason WEBB, Appellant,**

v.

**CITY OF DALLAS, Texas, Appellee.**

No. 05–05–01621–CV.

Court of Appeals of Texas, Dallas.

Nov. 28, 2006.

Rehearing Overruled Jan. 23, 2007.

---

Robert Thomas Baskett, Dallas, for Appellant.

Ayeh B. Powers, Office of the City Attorney, Dallas, for Appellee.

Before Justices BRIDGES, FRANCIS, and MAZZANT.

## OPINION

Opinion By Justice MAZZANT.

Jason Webb appeals the trial court's determination upholding his termination from the City of Dallas, Texas, police department. Webb brings three issues on appeal complaining of the trial court's upholding his termination and failing to make and file proper findings of fact and conclusions of law. We conclude the trial court erred in upholding Webb's termination, and we reverse the trial court's judgment.

## BACKGROUND

Before his termination in 2003, Webb was a Dallas police officer. On November 2, 2001, Webb was involved in an altercation with his ex-wife while he was off duty. He was arrested and charged with assault on a family member. *See* TEX. PEN.CODE ANN. § 22.01(b)(2) (Vernon Supp.2006). On July 18, 2002, the Dallas chief of police suspended Webb for five working days without pay because he violated the police department code of conduct "when on November 2, 2001, you were involved in an off-duty disturbance with your ex-wife which resulted in your arrest."

On January 13, 2003, in Dallas County Criminal Court No. 10, Webb pleaded nolo contendere to the criminal charge of misdemeanor assault from the November 2, 2001 incident. Pursuant to a plea agreement, the trial court deferred adjudication of his guilt, placed him on community supervision for nine months, and fined him $100. One of the conditions of community supervision was "no weapons or firearms." Webb successfully completed the commu-

nity supervision and was discharged on October 12, 2003.

## Internal Affairs Investigation

On January 15, 2003, the police department began an internal affairs investigation of Webb. The complaint filed with the department stated, "Plead guilty to M/A Family Violence." A second complaint filed January 17, 2003 stated, "Tarrant County DA's office stated officer Webb has been convicted (pled guilty) to a class A misdemeanor assault charge (Family Violence)." On January 24, 2003, Webb gave a written statement for the internal investigation: "I, Jason S. Webb, ... had pending Class A–Misdemeanor Assault/Family Violence case against me. On January 13, 2003, I plead No Contest to the charge. I received nine-months Deferred Probation and a $100.00 fine. The probation began January 13, 2003 and ends October 13, 2003."

On January 24, 2003, Webb was formally charged in the internal affairs investigation: "It is alleged that on January 13, 2003, you were involved in adverse conduct when you were convicted of Assault/Family Violence." The Dallas County Criminal District Attorney's Office sent the police department's internal affairs division a memorandum about Webb's criminal charges:

Case was out of County Criminal Court 10–Judge Lisa Fox

Defendant plead guilty 1/13/03 to:

9 mos. Deferred probation, fine, court costs, Affirmative Finding of Family Violence, Forfeit of Weapons, not able to possess weapons, Domestic Violence impact panel, Community Service.

On February 14, 2003, Webb filed an "internal statement":

On February 14, 2003, I, Jason S. Webb, # 7558, reported to Internal Affairs to review my investigation. On certain

documents, it stated that I pled *guilty* to the assault charge. This is not correct. As I previously stated in my Internal Statement, I plead [sic] No Contest before the court on January 13, 2003, not Guilty. The difference being that there is no affirmation of guilt by pleading No Contest. Therefore all documents contained in this investigation that state that I pled guilty are incorrect. The plea agreement filed with the court also shows that I pled No Contest, not guilty.

On February 24, 2003, Webb's sergeant-supervisor recommended Webb be terminated.[1] The lieutenant/manager, deputy chief, and assistant chief also recommended termination. On February 24, 2003, the internal affairs division sent the chief of police a memorandum stating,

> **SYNOPSIS:**
> There is one allegation against Police Officer Jason S. Webb, # 7558.
> 1. It is alleged that on January 13, 2003, Police Officer Jason Webb, # 7558, was involved in adverse conduct when he was convicted of Assault/Family Violence.
> **FINDINGS:**
> Allegation # 1 is **Sustained.**

The memorandum then stated Webb's conduct violated sections 4.2 and 4.3 of the police department's code of conduct. Those sections state,

> 4.2 No employee shall be convicted of, nor commit, any act or omission which is defined as a criminal act.
> 4.3 No employee shall engage in any conduct which adversely affects the morale or efficiency of the Department or which has a tendency to ad-

versely affect, lower or destroy public respect and confidence in the Department or officer.

After listing Webb's prior disciplines, including the July 2002 five-day suspension, the memorandum contained the recommendation of termination. On April 18, 2003, the police chief terminated Webb in a letter stating, "I have taken this action because you violated Chapter IV, Sections 4.2 and 4.3 of the Dallas Police Department Code of Conduct.... You violated Chapter IV, Sections 4.2 and 4.3 of the Dallas Police Department Code of Conduct when on January 13, 2003, you were convicted of Assault/Family Violence." The letter then listed Webb's prior discipline and informed him that he had five days from his receipt of the letter to appeal his termination by demanding a hearing before the city manager.

On May 12, 2003, Webb appealed his termination to the city manager by requesting a hearing. He asserted in the letter, "This discipline is unjust and erroneous because [sic] not based upon sufficient proof of the allegations of misconduct and because termination is too severe for any conduct that may have been established." Webb requested reinstatement and restoration of back pay and benefits. On August 22, 2003, the first assistant city manager upheld Webb's termination, stating in a letter to Webb,

> On August 21, 2003, I heard your appeal of the discharge issued to you by the Police Department. After reviewing the evidence and testimony presented at the hearing, it is my finding that the Department acted appropriately and within

1. Webb's supervisor included the following comments with his recommendation:
This employee, at one point, did return to work and functioned professionally. However, the employee is on a court initiated

probation regarding his criminal charges. Along with this probation goes certain restriction[s] that directly affect the employee's job. The employee still doesn't accept full responsibilit[y] for his action.

its authority. Therefore, I am upholding the Department's decision.

The letter then informed Webb he could appeal to an administrative law judge or the Civil Service Trial Board. Webb appealed to an administrative law judge.

### Hearing Before the Administrative Law Judge

The hearing before the administrative law judge took place on October 27, 2003, following Webb's discharge from community supervision. At the hearing, Webb's counsel objected to the "statement of questions" before the judge because the questions included whether Webb committed a criminal act. His counsel pointed out that Webb had already been disciplined by a five-day suspension for the commission of the act, so the current discipline could not be based on the commission of the act. The City's attorney agreed and told the court, "All we're concerned with is the conviction itself. And I don't intend to bring into evidence anything regarding the act itself because he was disciplined for that with a five-day suspension. So the only thing at issue today is the conviction itself."

The hearing was conducted in two phases. In Phase I, the judge determined whether one or more rules were violated. After finding a rule violation, the case would move to Phase II to determine the appropriateness of the discipline imposed for the rule violations. *See* DALLAS, TEX., CODE § 34–40(d)(1).

During the City's opening statement, the City's attorney repeated, "We're not concerned about the part about committing the crime because he has already been disciplined for that. The only question that is at issue is whether or not he was convicted of a criminal act." The City asserted Webb violated sections 4.2 and 4.3 of the police department's code of conduct by pleading "no contest" to a charge of family violence assault which, the City stated, constituted a conviction. Webb's attorney asserted in his opening statement that the notice Webb received was the specific allegation he violated the code of conduct by being "convicted." He argued that because adjudication of his guilt was deferred, he had not been convicted.

Theodora Ross, a detective in the internal affairs division during the investigation of Webb, testified the decision to recommend termination of Webb was based on his pleading no contest to family violence assault, having adjudication of guilt deferred, and receiving nine months' community supervision. Ross stated the information the internal affairs division used "was testimony from Officer Webb himself and a Dallas County District Attorney's office [memorandum] ... stating that he had been convicted of a family violence." Ross then testified the documents actually stated Webb received "deferred probation" and that she knew deferred adjudication was not a conviction.

Cindy Dyer, an assistant district attorney and the chief felony prosecutor of the family violence section, testified she was the supervisor of the court in which Webb was convicted. Dyer testified that, in most cases, successful completion of deferred adjudication does not result in a conviction; however, due to an amendment of the penal code in 1999 adding paragraph (f) to section 22.01, successful completion of deferred adjudication in family violence assault is a conviction. Dyer testified that she worked on the wording of the bill that amended the penal code and testified before the legislature in favor of the amendment. Dyer also testified that section 46.04 of the penal code made it an offense for a person convicted of family violence assault to possess a firearm for five years, and because deferred adjudications are

convictions under section 22.01(f), the prohibition on possession of a firearm for five years applied to Webb. Dyer testified that her office "does prosecute people for possessing firearms for five years after the end of their deferred," but she could not recall any such cases. She stated that she would not have allowed Webb's prosecutors to offer deferred adjudication if she did not believe that successful completion of the deferred adjudication in his case would result in a conviction.

After Dyer's testimony, both sides rested and closed Phase I. During the City's closing argument for Phase I, it argued, "And the only thing that we are alleging, or it was alleged in the termination letter for Jason Webb, was that he was convicted of family violence offense, and I believe that we did prove that." The administrative law judge found Webb violated sections 4.2 and 4.3 of the police department code of conduct. The judge then made clear that the findings of the violations of the code of conduct were based on Webb's having been convicted.

At the conclusion of Phase II, the administrative law judge sustained Webb's termination. Webb appealed the decision to district court.

### District Court Proceeding

The hearing before the district court took place on August 9, 2005. Under the City's civil service provisions, "The appeal to the district court must be decided upon review of the record of the hearing." DALLAS, TEX., CHARTER ch. XVI, § 12(b); DALLAS, TEX., CODE § 34–40(f)(2)(B). After hearing argument from counsel for both sides, the trial court upheld the decision of the administrative law judge and awarded the City its attorney's fees.

### DUE PROCESS

■ In his first issue, Webb asserts he did not receive sufficiently specific notice of the allegations against him. *See Baca v. City of Dallas,* 796 S.W.2d 497, 499 (Tex. App.-Dallas 1990, no writ) (employee entitled to "oral or written notice of the charges against him"). Webb received specific notice in the April 18, 2003 termination letter from the Chief of Police:

Dear Mr. Webb:

Pursuant to the authority vested in me as Chief of Police, by the Charter of the City of Dallas, I have discharged you from your employment as an employee of the Dallas Police Department effective close of business Friday, April 18, 2003.

I have taken this action because you violated Chapter IV, Sections 4.2 and 4.3 of the Dallas Police Department Code of Conduct which reads as follows:

### *DALLAS POLICE DE-PARTMENT—CODE OF CONDUCT*

### *CHAPTER IV*

### *PROFESSIONAL CONDUCT AND PERSONAL BEARING*

4.2 No employee shall be convicted of, nor commit, any act or omission which is defined as a criminal act.

4.3 No employee shall engage in any conduct which adversely affects the morale or efficiency of the Department or which has a tendency to adversely affect, lower or destroy public respect and confidence in the Department or officer.

You violated Chapter IV, Sections 4.2 and 4.3 of the Dallas Police Department Code of Conduct when on January 13, 2003, you were convicted of Assault/Family Violence.

In addition, your prior discipline is as follows:

04–17–00 AWOL, From Court Assignment-**Documented Counseling**

07–28–00 Work, Off Duty Employment Policy Violation-**Supervisor's Report**

02–22–01 Domestic Disturbance Discrediting the Department-1 **Day Suspension**

05–14–02 Conduct unbecoming an Officer-1 **Day Suspension**

04–17–02 Domestic Disturbance Discrediting the Department-5 **Day Suspension**

If you desire to appeal this discharge, you must, within five (5) days from the receipt of this letter, demand a hearing before City Manager Teodoro J. Benavides, 1500 Marilla, Room 4–E–N. Such demand must be made in writing, otherwise this termination will become non-appealable.

Sincerely,

TERRELL BOLTON

CHIEF OF POLICE

Section 34–37(d)(2)(A) of the Dallas Code provides the notice requirements a disciplined officer must receive:

(A) Written notice must be given to the employee stating:

(i) the type of disciplinary action taken, i.e., reprimand, suspension, demotion, or discharge;

(ii) the specific rule violated;

(iii) the specific incident causing the action; and

(iv) the employee's right to appeal, if applicable, to a specific office within a specified time.

DALLAS, TEX., CODE § 34–37(d)(2)(A). The termination letter complies with all the requirements. The letter notified Webb that his specific conduct, being "convicted of Assault/Family Violence," violated two specific rules, sections 4.2 and 4.3 of the code of conduct. We conclude Webb received adequate notice of the allegations against him. We overrule his first issue.

## SUBSTANTIAL EVIDENCE

In his second issue, Webb contends the trial court erred in upholding the administrative law judge's decision sustaining his termination because the administrative law judge's decision is not supported by substantial evidence.

■■■■ Under the Dallas City Charter and Code, judicial review is based on review of the record before the trial board or administrative law judge. *See* DALLAS, TEX., CHARTER ch. XVI, § 12(b); DALLAS, TEX.CODE § 34–40(f)(2)(B). The decision is reviewed under the substantial evidence rule. *See Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 955–56 (Tex.1984). The reviewing court determines whether the agency's decision is reasonable based on the facts before the agency. *Id.* at 956. The agency is the primary fact-finding body, and the question before the courts is one of law. *Id.* The courts may not substitute their judgment for that of the agency on controverted issues of fact, nor may the courts set aside the agency's decision because the evidence did not compel the result reached by the agency. *Id.; Dallas County Civil Serv. Comm'n v. Warren*, 988 S.W.2d 864, 869 (Tex.App.-San Antonio 1999, no pet.). The courts are concerned only with the reasonableness of the administrative decision, not its correctness. *Brinkmeyer*, 662 S.W.2d at 956; *Warren*, 988 S.W.2d at 869. Courts must affirm administrative findings if there is more than a scintilla of evidence to support them. *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex.1999).

■■■■ In conducting a substantial evidence review, the courts need not consider

**816**

"incredible, perjured, or unreasonable testimony because such evidence is not substantial." *Brinkmeyer,* 662 S.W.2d at 956 (quoting *Trapp v. Shell Oil Co.,* 145 Tex. 323, 349, 198 S.W.2d 424, 440 (1946)). However, the reviewing courts may go no further than to examine the evidence for these infirmities. If there is substantial evidence which supports the order, the courts are bound to follow the discretion of the administrative body. *Id.*

### Deferred Adjudication or Conviction

The City steadfastly maintained before the administrative law judge that the issue to be determined in Phase I of the trial was whether Webb was *convicted* of family violence assault. In its appellee's brief, the City states, "The City has consistently maintained that Webb was terminated for being convicted of a family violence assault under both sections 4.2 and 4.3 of the Code of Conduct." Accordingly, we must determine whether the administrative law judge's implied determination that Webb

was convicted is reasonable based on the evidence.

■ During Phase I of the hearing, Detective Ross and Chief Prosecutor Dyer testified that Webb was "convicted" of family violence assault. Ross testified she based her statement on a memorandum from the district attorney's office. When shown the memorandum, however, Ross agreed that it stated Webb received "deferred probation," and she agreed that deferred adjudication was not a conviction. We conclude Ross's testimony that Webb was convicted is not substantial evidence. No reasonable factfinder would rely on Ross's testimony that Webb was convicted because she subsequently admitted that testimony was based on a misunderstanding of the memorandum.

Dyer testified that discharge from deferred adjudication community supervision usually constitutes a dismissal of the criminal charges without conviction. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 5(c) (Vernon Supp.2006);[2] *McNew v. State,* 608

2. Article 42.12, section 5(c) provides,
 On expiration of a community supervision period imposed under Subsection (a) of this section, if the judge has not proceeded to adjudication of guilt, the judge shall dismiss the proceedings against the defendant and discharge him. The judge may dismiss the proceedings and discharge a defendant, other than a defendant charged with an offense requiring the defendant to register as a sex offender under Chapter 62, as added by Chapter 668, Acts of the 75th Legislature, Regular Session, 1997, prior to the expiration of the term of community supervision if in the judge's opinion the best interest of society and the defendant will be served. The judge may not dismiss the proceedings and discharge a defendant charged with an offense requiring the defendant to register under Chapter 62, as added by Chapter 668, Acts of the 75th Legislature, Regular Session, 1997. Except as provided by Section 12.42(g), Penal Code, a dismissal and discharge under this section may not be deemed a conviction for

the purposes of disqualifications or disabilities imposed by law for conviction of an offense. For any defendant who receives a dismissal and discharge under this section:
 (1) upon conviction of a subsequent offense, the fact that the defendant had previously received community supervision with a deferred adjudication of guilt shall be admissible before the court or jury to be considered on the issue of penalty;
 (2) if the defendant is an applicant for a license or is a licensee under Chapter 42, Human Resources Code, the Texas Department of Human Services may consider the fact that the defendant previously has received community supervision with a deferred adjudication of guilt under this section in issuing, renewing, denying, or revoking a license under that chapter; and
 (3) if the defendant is a person who has applied for registration to provide mental health or medical services for the rehabilitation of sex offenders, the Interagency

S.W.2d 166, 172 (Tex.Crim.App.1978); *Hurley v. State*, 130 S.W.3d 501, 505 (Tex. App.-Dallas 2004, no pet.). Although Webb successfully completed his deferred adjudication community supervision, Dyer testified that Webb was convicted of family violence assault because, under section 22.01(f) of the penal code, deferred adjudication for family violence assault is a conviction.

 Statutory construction is a question of law. *Jones v. State*, 175 S.W.3d 927, 930 (Tex.App.-Dallas 2005, no pet.). When construing a statute, our primary objective is to give effect to the legislature's intent. *Sheshunoff v. Sheshunoff*, 172 S.W.3d 686, 692 (Tex.App.-Austin 2005, pet. denied). To discern that intent, we look first to the plain and common meaning of the statute's words. *Id.* We also consider the statute as a whole rather than focus on isolated portions. *Tex. Dep't. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex.2004). We presume every word in a statute is used for a purpose and must be given effect if reasonable and possible. *Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 593 (Tex.2000). Likewise, every word excluded from a statute must be presumed to have been excluded for a purpose. *City of Austin v. Quick*, 930 S.W.2d 678, 687 (Tex.App.-Austin 1996), *aff'd*, 7 S.W.3d 109 (Tex.1999).

On November 2, 2001, section 22.01 of the penal code provided,

§ 22.01. Assault

(a) A person commits an offense if the person:

Council on Sex Offender Treatment may consider the fact that the defendant has received community supervision under this section in issuing, renewing, denying, or revoking a license or registration issued by that council.

TEX.CODE CRIM. PROC. ANN. art. 42.12, § 5(c) (Vernon Supp.2006).

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

\* \* \*

(b) An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against:

\* \* \*

(2) a member of the defendant's family or household, if it is shown on the trial of the offense that the defendant has been previously convicted of an offense against a member of the defendant's family or household under this section.

\* \* \*

(f) For the purposes of this section, a defendant has been previously convicted of an offense against a member of the defendant's family or a member of the defendant's household under this section if the defendant was adjudged guilty of the offense or entered a plea of guilty or nolo contendere in return for a grant of deferred adjudication, regardless of whether the sentence for the offense was ever imposed or whether the sentence was probated and the defendant was subsequently discharged from community supervision.

TEX. PEN.CODE ANN. § 22.01.[3]

 We conclude Dyer has misconstrued the statute. Paragraph (f) does not

3. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, sec. 1.01, § 21.01, 1993 Tex. Gen. Laws 3586, 3616–17, *amended by, inter alia*, Act of May 26, 1999, 76th Leg., R.S. ch. 1158, § 1, 1999 Tex. Gen. Laws 4063, 4063–64, *and* Act of May 27, 2005, 79th Leg., R.S., ch. 789, §§ 1, 2, 2005 Tex. Gen. Laws 2709, 2709–10.

state that a person who receives deferred adjudication for family violence assault has been convicted. Instead, it states "For the purposes of this section, a *defendant has been previously convicted*" if he had received deferred adjudication in a plea bargain on a previous charge of family violence assault. The italicized words appear in paragraph (b)(2) where they identify the type of defendant for whom the charge of family violence assault will constitute a third degree felony instead of a Class A misdemeanor. The use of the word "defendant" in paragraph (f) shows the legislature intended the provision to apply to a person facing criminal charges. Thus, the phrase "a defendant has been previously convicted" means the person currently facing a criminal charge has a previous conviction from a separate charge if the remaining conditions of paragraph (f) are met. Webb was not facing criminal charges during the hearing before the administrative law judge because he had successfully completed the deferred adjudication community supervision; therefore, he was not a defendant. At the time he was terminated, Webb was a "defendant" because he was still facing the assault charge, but he was not a defendant "previously convicted" for purposes of paragraphs (f) and (b)(2). At no time during these events was subsection (f) applicable to Webb.

Dyer's interpretation results in a contradiction within paragraph (f). The paragraph clearly shows the legislature intended for defendants charged with family violence assault to be able to plead guilty or nolo contendere and receive deferred adjudication. Under Dyer's interpreta-

tion, however, deferred adjudication would be impossible because the order deferring adjudication would constitute a conviction, which is an adjudication of guilt. Dyer's testimony that Webb was convicted of family violence assault because he received deferred adjudication is unreasonable and does not constitute substantial evidence.

We conclude there is not more than a scintilla of evidence, and therefore no substantial evidence, to support the City's allegation that Webb violated sections 4.2 and 4.3 of the code of conduct by being "convicted of Assault/Family Violence."

### Substantial Evidence Without Proof of Conviction

The City asserts the administrative law judge's determination that Webb violated section 4.3 of the code of conduct is supported by substantial evidence even if Webb was not convicted. Section 4.3 of the code of conduct states, "No employee shall engage in any conduct which adversely affects the morale or efficiency of the Department or which has a tendency to adversely affect, lower or destroy public respect and confidence in the Department or officer." The City argues substantial evidence shows Webb's conduct in disposing of his assault charge violated this provision because:

- the conditions of his community supervision prohibited him from carrying a weapon for nine months; [4]
- Webb's peace officer license was suspended for at least the period of his community supervision; and

---

4. Dyer testified, and the City asserts, that Webb was barred by section 46.04(b) of the penal code from possessing a firearm for five years from the expiration of his community supervision. *See* TEX. PEN.CODE ANN. § 46.04(b) (Vernon Supp.2006). The five-

year ban on possession of a firearm applies only to persons convicted of felonies or family violence assaults. *See id.* As discussed above, Webb was not convicted, so section 46.04(b)'s five-year ban does not apply to him.

• Webb could not be an objective police officer in responding to family violence calls.

The City asserts these factors adversely affected the efficiency of the Dallas Police Department and had a tendency to lower public respect and confidence in the department and in Webb.

The City argues its notice to Webb was sufficient to include any disposition of the criminal charges as well as conviction. The City relies on an unpublished opinion from this Court, *Dallas County Sheriff's Department Civil Service Commission v. Smith,* No. 05–93–00632–CV, 1994 WL 469327 (Tex.App.-Dallas Aug.30, 1994, writ denied).[5] In that case, on June 10, Deputy Smith's wife called police and told them Smith had assaulted her on June 8. Smith was arrested for Class A misdemeanor assault on June 14 and suspended from the sheriff's department the same day. On June 15, he gave a sworn statement about the incident and was terminated the same day. Smith appealed his termination and was reinstated by the district court. *Id.* at *1. One of Smith's arguments was that the termination letter was insufficient to provide sufficient notice of the charge for which he was terminated. The termination letter stated,

> On June 14, 1990 at approximately 4:30 p.m., subsequent to a family disturbance, you became involved in a police incident to your discredit and to the discredit of the Department by being arrested and placed in the Garland City Jail on a Class 'A' misdemeanor charge; Assault.

*Id.* at *2 (emphasis omitted). The letter then advised Smith that his conduct violated four sections of the code of conduct. Smith argued the letter failed to meet due process because he was charged with engaging in improper conduct on June 14 by being arrested, but he was tried for his conduct on the day of the assault, June 8. *Id.* This Court disagreed with Smith and concluded "this notice was sufficient to alert Smith that his conduct, which led to the arrest, was an issue" for two reasons: (1) Smith's actions on June 8 prompted his arrest and were inseparable from the subsequent arrest and (2) the notice specifically referred to the "family disturbance," apprising Smith of the nature of the charge against him. *Id.*

Analogizing *Smith* to the case before us, the City asserts, "Webb knew that he was being disciplined for the disposition of his assault case, and had more than ample notice of the allegations against him." We disagree. This Court concluded Smith had sufficient notice that his termination was for being involved in a family disturbance leading to his arrest because the termination letter specifically alleged Smith was arrested subsequent to a family disturbance. *Id.* In this case, however, the termination letter stated Webb violated sections 4.2 and 4.3 by being convicted; the letter did not provide any notice that Webb's termination was for disposition of his assault case other than by conviction.

 The City's attempt to seek justification for the termination outside the allegations in the termination letter violates the City's ordinances. According to section 34–37 of the City's Code,

> The procedure for a formal disciplinary action of reprimand, suspension, demotion, or discharge includes the following:
>
> (A) Written notice must be given to the employee stating:

---

5. Because the opinion was issued before January 1, 2003, it has no precedential value.

*See* Tex.R.App. P. 47.7.

(i) the type of disciplinary action taken, i.e., reprimand, suspension, demotion, or discharge;

(ii) the specific rule violated;

(iii) *the specific incident causing the action;* and

(iv) the employee's right to appeal, if applicable, to a specific office within a specified time.

DALLAS, TEX., CODE § 34–37(d)(2)(A) (emphasis added). The City's April 18, 2003 termination letter meets all the requirements. It specifies the disciplinary action, discharge; it alleges the specific rule violated, sections 4.2 and 4.3 of the code of conduct; it states the specific incident causing the action, "You violated Chapter IV, Sections 4.2 and 4.3 of the Dallas Police Department Code of Conduct when on January 13, 2003, you were convicted of Assault/Family Violence"; and it gave instructions for how to appeal. The City could have alleged Webb violated section 4.3 by pleading nolo contendere to family violence assault, by being prohibited from carrying a weapon for nine months, or by having his peace officer's license suspended, but it did not do so. Instead, the City notified Webb he violated the code of conduct "when ... you were convicted." With no explanation, the City now seeks to violate its own ordinances and base Webb's discharge on an incident not specifically set forth in the termination letter.

 Furthermore, throughout the hearing before the administrative law judge, the City insisted that the sole basis alleged for Webb's violations of sections 4.2 and 4.3 of the code of conduct was his conviction for family violence assault. The doctrine of judicial estoppel prohibits a party from asserting a contrary position in a subsequent proceeding. *See, e.g., Byrd v. Estate of Nelms,* 154 S.W.3d 149, 160 (Tex.App.-Waco 2004, pet. denied); *Goldman v. White Rose Distrib. Co.,* 936 S.W.2d 393, 397 (Tex.App.-Fort Worth 1996), *vacated pursuant to settlement,* 949 S.W.2d 707 (Tex.1997). The doctrine is designed to protect the integrity of the judicial process by preventing a party from "playing fast and loose" with the courts to suit its own purposes. *In re C.Z.B.,* 151 S.W.3d 627, 633 (Tex.App.-San Antonio 2004, no pet.). Although the doctrine is most commonly applied to the sworn statements of witnesses, it also applies to the statements of attorneys explaining their clients' position in the litigation. *Byrd,* 154 S.W.3d at 160; *Goldman,* 936 S.W.2d at 397–98. We conclude the City's statements to the administrative law judge that the incident violating the code of conduct was Webb's conviction for family violence assault judicially estopped the City from asserting a contrary position before the district court and this Court. *See Goldman,* 936 S.W.2d at 397; *see also Peck v. Peck,* 172 S.W.3d 26, 30–32 (Tex.App.-Dallas 2005, pet. denied) (attorney who judicially admitted at trial that insurance benefits were community property was barred from asserting on appeal that insurance benefits were separate property).

## Conclusion

After considering the entire record, we conclude the administrative law judge's determination in Phase I of the hearing that Webb violated sections 4.2 and 4.3 of the code of conduct is not supported by substantial evidence. With no rule violations proven, the administrative law judge should not have proceeded to Phase II and sustained Webb's termination. Likewise, we conclude the trial court erred in upholding the administrative law judge's decision. We sustain Webb's second issue.

Because of our determination of Webb's second issue, we need not address Webb's third issue asserting the trial court's find-

ings of fact and conclusions of law were insufficient.

## CONCLUSION

We reverse the trial court's judgment, and we render judgment that Webb be reinstated to his former position with the City. We remand the cause to the trial court for further proceedings.