

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-08-00304-CR

BRADLEY KELTON CRENSHAW                                          APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 4 OF TARRANT COUNTY

----------

## DISSENTING OPINION ON REMAND

----------

The majority has done exactly what the Texas Court of Criminal Appeals has instructed it to do, as it must. Because I am not the author of the majority opinion, I express my very fundamental disagreement in appropriately respectful dissent.

On original submission, this court held that when the State, in its charging instrument, tells the defendant what act of his the State will prove was unlawful,

the State is bound by that pleading.[1] (I attach the original, unpublished opinion as an appendix.) That is, when the State told Appellant that it was going to prove that he committed the offense of driving while intoxicated (DWI) by not having the normal use of his mental and physical faculties, under the "expressio unius maxim . . . [which] is a product of logic and common sense, expressing the learning of common experience that when people say one thing they do not mean something else,"[2] Appellant and this court were foolish enough to believe that the State was bound by its notice.[3] Imagine our surprise when we learned that in spite of testimony that (1) the witness did not have all the information necessary for an admissible extrapolation estimate of Appellant's blood alcohol, and (2) retrograde extrapolation was not widely accepted, but, rather, was actually quite controversial, the witness was allowed to inform the jury that Appellant would surely have tested at a level of over .08 at the time he was driving. As icing on the cake, the jury was let in on the secret that a .08 reading is really unnecessary because everyone loses the normal use of his mental and physical faculties at a reading of .04. Nevertheless, the trial court included in the charge the jury instruction that a person is intoxicated at a level of .08, despite

---

[1]*See Crenshaw v. State*, No. 02-08-00304-CR, 2011 WL 3211258, at *4 (Tex. App.—Fort Worth July 28, 2011) (mem. op., not designated for publication) (*Crenshaw I*), *rev'd*, 378 S.W.3d 460 (Tex. Crim. App. 2012) (*Crenshaw II*).

[2]*Williams v. State,* 965 S.W.2d 506, 507 (Tex. Crim. App. 1998).

[3]*Crenshaw I*, 2011 WL 3211258, at *3–4.

2

the fact that the only pleading was loss of normal use of Appellant's mental or physical faculties.  And, although Appellant was never tested for the presence of marijuana in his system, the jury was also allowed to convict if they found that he was intoxicated as a result of ingesting alcohol or alcohol and marijuana.

If the abstract portion of the charge containing the definitions is irrelevant, how do we deal with the line of cases turning on overly expansive or overly restrictive definitions in the abstract portion of the jury charge?[4]  If the charging instrument, no matter what it alleges, does not limit the State's scope of proving the offense, why do we have charging instruments?  They all contain "on or about dates" and have been held to include the entire limitation period.[5]  The names do not have to be correct.[6]  The county does not have to be correct; pleading the county is merely a venue allegation that need be proved only by a preponderance of the evidence if there is an objection.[7]  This court is required to

---

[4]*See, e.g., Alvarado v. State*, 704 S.W.2d 36, 38 (Tex. Crim. App. 1985) (op. on reh'g); *Haggins v. State*, 785 S.W.2d 827, 828 (Tex. Crim. App. 1990).

[5]*Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997).

[6]*See Byrd v. State*, 336 S.W.3d 242, 247–48 (Tex. Crim. App. 2011) (citing *Fuller v. State*, 73 S.W.3d 250, 254 (Tex. Crim. App. 2002)).

[7]Tex. Code Crim. Proc. Ann. art. 13.17 (West 2005).

"presume that venue was proved in the trial court unless it was disputed in the trial court or the record affirmatively shows the contrary."[8]

Now the State does not have to plead the manner in which it intends to prove the offense.[9] Traditionally, not only was the State required to prove the manner and means by which a defendant did the acts,[10] intoxication was required to be voluntary.[11] As Judge Cochran noted in her concurring opinion in *Farmer v. State*, "Texas, like most states, recognizes an affirmative defense of involuntary intoxication, and it applies even in DWI cases."[12] The Texas Court of Criminal Appeals has repeatedly instructed us in recent years that the manner of intoxication is evidentiary and does not have to be included in the charging instrument, yet intoxication refers to a voluntary act of a defendant that must be proved. That is, it must be proved that the defendant voluntarily took alcohol, marijuana, zolpidem, or whatever the intoxicant or combination of intoxicants into

---

[8]*Meraz v. State*, 415 S.W.3d 502, 506 (Tex. App.—San Antonio 2013, no pet.) (citing Tex. R. App. P. 44.2(c)(1)); *see also Rhyne v. State*, 387 S.W.3d 896, 901–02 (Tex. App.—Fort Worth 2012, no pet.).

[9]*State v. Barbernell*, 257 S.W.3d 248, 256 (Tex. Crim. App. 2008).

[10]*See State v. Carter*, 810 S.W.2d 197, 200 (Tex. Crim. App. 1991), *overruled by Barbernell*, 257 S.W.3d at 256.

[11]*See Ex parte Ross*, 522 S.W.2d 214, 218 (Tex. Crim. App.) (interpreting former DWI statute article 6701*l*-1 of the Texas Civil Statutes to require voluntary intoxication), *cert. denied*, 423 U.S. 1018 (1975), *abrogated on other grounds by Ex parte McCain,* 67 S.W.3d 204 (2002).

[12]411 S.W.3d 901, 908 (Tex. Crim. App. 2013) (Cochran, J., concurring) (citation omitted).

his body.  That is an act of the defendant that must be proved and that the defendant must defend against.  Why, then, is he not entitled to notice so that he can provide a defense at trial?

Trial by ambush is not the goal of our justice system.  The expert necessary to discuss alcohol intoxication is likely not the expert necessary to discuss the effect of a particular antihistamine in light of a particular patient's history.  And the discussion of retrograde extrapolation or the interaction of two drugs or a particular substance and alcohol would likely require a different kind of expertise.

If a defendant is not entitled to notice of his own actions that the State will prove as elements of his guilt, why not just give him a statute number?  Instead of our current method of pleading, why does the State not just say, "John Smith violated section xxxx of the penal code.  Guess how?"  As I previously explained in a published dissent,

> I believe that since the decision in *Almanza v. State*, jury charges in criminal cases have grown increasingly irrelevant.  Our courts have held that an error in the application paragraph that instructs the jurors on the elements they must find in order to convict is harmless if the abstract definitional paragraph is correct.  Courts have also held that an error in the abstract definitional portion of the jury charge does not egregiously mislead the jury if the application paragraph is correct.  Apparently, if any portion of the jury charge is correct, the erroneous verdict form is rendered harmless.
>
> Case law instructs us that we must assume that the jury follows the instructions in the jury charge.  Contemporaneously, we must assume that the jury does not follow an erroneous instruction in the jury charge if there is some correct instruction in the charge.  I am frankly confused by these rules because they appear in conflict

5

with each other and because I do not understand how the jury, who is presumed to follow the instructions in the jury charge, is supposed to know which instructions to follow and which instructions to ignore. At some point, common sense must intrude into this alternative universe we have created. In other contexts, words have meaning. Apparently in the world of jury charges, they do not. Delivery does not mean delivery. Delivery means possession. The prosecutor who bore the unenviable burden of explaining to the jury that delivery means possession candidly explained to the jury that the charge made no sense. As the majority points out,

> In the State's closing argument, a prosecutor properly told the jury,

>> Now, when the court was reading the Court's Charge to you, some of you may have noticed on the verdict form she said delivery of a controlled substance. Don't let that throw you. That's a quirk of the way the statute is worded. It covers delivery or possession with intent to deliver.

There is not a hint of actual delivery anywhere in the record. Appellant was not accused of delivery of a controlled substance. He was accused in the indictment only of possession and possession with intent to deliver. Yet the jurors were instructed that they could convict only of possession or of delivery. Possession with intent to deliver was not an option, although that is what Appellant was accused of in the indictment. The jurors were allowed to convict only of an offense for which Appellant was not indicted if they found any intent to deliver the controlled substance.

In *Almanza,* the jurors were instructed to convict Almanza of aggravated rape whether they found him guilty of "plain rape" or aggravated rape. The objection that Almanza was not accused of aggravated rape was held to be no objection to the jury charge. Now we have created new fictions: a jury is presumed to follow the instructions in a jury charge unless the instruction is incorrect. If there is an incorrect instruction and a correct instruction, the jury is

presumed to know which is correct and to ignore the incorrect instruction.[13]

I, therefore, join Judge Clinton and suggest the following jury charge:

*Now, ladies and gentlemen:*

*You must consider whether Bradley Kelton Crenshaw is guilty of some offense against the peace and dignity of the State. A person commits DWI if he operates a motor vehicle in a public place while he is intoxicated. Although I could provide you with a definition of intoxication, it would be irrelevant. You might want to consider whether he is guilty of DWI. Several witnesses think he was intoxicated, some because he drank alcohol, and some because he ingested marijuana, although nobody knows how much. So in deliberating the guilt of Bradley Kelton Crenshaw, you might also want*

> to talk of many things:
> Of shoes—and ships—and sealing wax—
> Of cabbages—and kings—
> And why the sea is boiling hot—
> And whether pigs have wings.[14]

/s/ Lee Ann Dauphinot

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: February 27, 2014

---

[13] *Vanbelle v. State*, 2013 WL 1908302, at *5–6 (Tex. App.—Fort Worth May 9, 2013, pet. ref'd) (Dauphinot, J., dissenting) (citations omitted).

[14] *Id. (quoting Cane v. State*, 698 S.W.2d 138, 141 (Tex. Crim. App. 1985) (quoting Lewis Carroll, *Through the Looking–Glass*, Ch. 4, quoting the Walrus)).

7

# Appendix



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-08-00304-CR

BRADLEY KELTON CRENSHAW                                   APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

FROM COUNTY CRIMINAL COURT NO. 4 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

This case raises certain issues fundamental to our system of criminal justice, especially those issues involved in substantial justice and fair play. In a system in which the indictment or information is to provide notice to a defendant of the charges against which he must defend himself and there is no ability to request a bill of particulars, and in which the definition of intoxication has been held to be evidentiary only and not an element of the offense, can the State in

[1]*See* Tex. R. App. P. 47.4.

fundamental fairness plead only the subjective definition of intoxication in two different paragraphs, alleging both consumption of alcohol alone and consumption of alcohol and/or drugs, offer flawed evidence of per se intoxication by retrograde extrapolation, and then properly obtain an instruction to the jury that the definition of intoxication includes the per se definition? We hold that the State may not.

A jury convicted Appellant Bradley Kelton Crenshaw of driving while intoxicated (DWI). The trial court sentenced him to 120 days' confinement and an $850 fine, probated for twenty-four months. In his sole issue, Appellant challenges the trial court's jury charge, which instructed the jury on both the subjective definition and the per se definition of intoxication despite the information having alleged only the subjective definition. Because we hold that Appellant suffered some harm from the trial court's erroneously instructing the jury on the per se definition, we reverse the trial court's judgment and remand this case to the trial court for a new trial.

## I. Factual and Procedural Background

In two paragraphs, Appellant was charged by information with "operat[ing] a motor vehicle in a public place while [he] was intoxicated by not having the normal use of his mental or physical faculties by reason of the introduction" of (1) alcohol, or (2) "alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of these substances into his body."

2

At trial, in anticipation of the State's introduction of his blood test results and extrapolation testimony, Appellant objected under rules 401 and 402 that the evidence would be confusing to the jury and that it was not relevant to whether he had had the normal use of his faculties at the time of the alleged offense. The trial court overruled the objection, and Appellant requested and was granted a running objection.

Southlake police officer Andrew Anderson testified that at about 2:00 a.m. on February 19, 2007, he arrested Appellant for DWI and that he took Appellant to the hospital for a blood draw at about 4:00 a.m. Anderson further testified that when he asked Appellant if he had been drinking, Appellant stated that he had had bourbon and Coke at 1:00 a.m.

Officer Anderson also testified that he smelled marijuana "on [Appellant's] breath" and that he found a leaf of marijuana on the console between Appellant and the passenger. Was he testifying that Appellant was eating marijuana a la Alice B. Toklas?[2] Officer Anderson made no mention of smelling marijuana smoke in the car, on Appellant's clothing, or in his hair. Officer Anderson made no mention of finding any joint, roach, ashes, or other indication that marijuana had been smoked. He arrested the passenger for public intoxication. Although Appellant's blood was drawn and tested for alcohol, no blood test was performed

---

[2]Alice B. Toklas, *The Alice B. Toklas Cook Book* 259–60 (Harper Perennial paperback. ed. 2010) (1954) (garnering notoriety for including a recipe for brownies that included marijuana as an ingredient).

for the presence of marijuana. There was no evidence of how much marijuana, if any, Appellant "indulged in the use of," and no evidence of any other controlled substance, drug, or dangerous drug in Appellant's system.

Andrew Macey, a forensic scientist with the Texas Department of Public Safety, testified that the blood sample taken from Appellant approximately two hours after his stop contained .07 grams of alcohol per 100 milliliters of blood. Angela Caretta Springfield, chief toxicologist for the Tarrant County Medical Examiner, testified that under Texas law, .08 is legal intoxication. She further testified that if a person is 6'1" and 140 pounds, has had "one or two bourbon and Cokes," is stopped by the police at 2:06 a.m., and had a blood draw at 4:01 a.m., if the blood test showed a blood alcohol concentration (BAC) of .07, then at the time of his driving, the person would have had a BAC of at least .08.

During the charge conference, the State objected to the proposed definition of intoxication, which did not state that a person was intoxicated if he had an alcohol concentration of .08 or more. Citing *State v. Barbernell*,[3] the State argued that to give notice to Appellant, it only needed to plead intoxication in the information. The State argued that the information required no other references as to an objective or subjective standard and that "[e]verything after that is icing on the cake." The State requested the trial court to provide a

_____

[3]257 S.W.3d 248, 256 (Tex. Crim. App. 2008).

4

definition in the charge that tracked the language of the information and also included the .08 per se intoxication standard.

Appellant asserted that the State went beyond the mere plea of intoxication in the information and alleged loss of normal use of mental and physical faculties. He argued that the inclusion of the subjective standard in the information limited his notice, that he relied on the notice in preparation of his defense, that the addition of the per se definition in the jury charge would be prejudicial, and that the jury charge should track the language of the information. The trial court included the per se definition in the jury charge but did not include it in the application paragraph.

Specifically, over objection, the trial court instructed the jury that

"Intoxicated" means:

A. Not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of these substances into the body; or

B. Having an alcohol concentration of 0.08 or more.

The trial court also instructed the jury, without objection, that

You are further instructed that if a defendant indulges in the use of Marijuana to such an extent that he thereby makes himself more susceptible to the influence of alcohol than he otherwise would have been, and by reason thereof becomes intoxicated from recent use of alcohol, he would be in the same position as though his intoxication was produced by the use of alcohol alone.

The application paragraph permitted the jury to convict Appellant of DWI if they found beyond a reasonable doubt that he

5

did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body, and while so intoxicated, by reason of the introduction of alcohol into his body, either alone or by introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of these substances into the body, and on the said date did then and there drive or operate a motor vehicle in a public place while intoxicated.

## II. Charge Error

In his sole issue, Appellant complains that the jury charge erroneously instructed the jury to convict him based on either the "subjective" definition of intoxication or the "per se" definition despite the State's sole reliance on the subjective allegation in the information. After this case was submitted, this court requested briefing of the following subsidiary but pertinent matters:[4]

- Whether an indictment that alleges intoxication by lack of normal use but that does not allege per se intoxication constitutes notice to a defendant that the State will not seek to convict on a theory of per se intoxication;

- Whether a claim of lack of notice of prosecution on a per se theory of intoxication requires a motion for continuance or some other request for additional time to secure an expert in order to preserve the notice claim or whether the objection to the admission of the evidence sufficiently preserves the claim;

- Whether the reasoning of the court in *Cook v. State*,[5] in holding that definitions in a jury charge must be limited to the conduct elements, applies in this case;

---

[4]*See* Tex. R. App. P. 38.1(f), 38.9; *Pena v. State,* 191 S.W.3d 133, 138 (Tex. Crim. App. 2006); *Leadon v. State*, 332 S.W.3d 600, 613 n.3 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Ramirez v. State*, 301 S.W.3d 410, 419 n.6 (Tex. App.—Austin 2009, no pet.); *Ramsey v. State*, 249 S.W.3d 568, 576 n.5 (Tex. App.—Waco 2008, no pet.); *see also Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989).

[5]884 S.W.2d 485, 491 (Tex. Crim. App. 1994).

- Whether the objected-to testimony regarding retrograde extrapolation complained of in Appellant's brief was properly admitted under the *Daubert-Kelly* standard and, if not, whether its admission was reversible error in light of the jury instruction;

- If the testimony of retrograde extrapolation was improperly admitted and if there is no properly admitted evidence of per se intoxication, whether it was error to include per se intoxication in the definition of intoxication submitted to the jury;

- Whether there was sufficient evidence of the amount of marijuana in Appellant's system and the effect of that amount of marijuana to support the synergistic effect instruction and whether the instruction was sufficient to properly guide the jury in applying the instruction, or whether the evidence of the extent to which Appellant "indulge[d] in the use of marijuana" and of the effect of that amount of marijuana was inadequate so that the instruction was not supported by the evidence or, in light of the evidence, was confusing to the jury; and

- Whether it was error to submit to the jury the application paragraph allowing the jury to convict if it found Appellant was intoxicated as a result of the introduction of a drug or a dangerous drug when there was no evidence of the introduction of a drug or a dangerous drug; if it was not error to submit the application paragraph, why was it not error; if it was error, whether the objection to the charge included an objection to that application paragraph; and if it was error, whether such error was harmless, merely somewhat harmful, or egregiously harmful.

Appellate review of error in a jury charge involves a two-step process.[6]

Initially, we must determine whether error occurred.[7]

In *Barbernell*, the Texas Court of Criminal Appeals held that an information

alleging neither definition of intoxication nevertheless provided Barbernell with

---

[6]*Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).

[7]*Abdnor*, 871 S.W.2d at 732.

adequate notice of the charges against him,[8] but that is not the situation here. The State here conscientiously elected to narrow its case by relying solely on the subjective definition in the information but at trial sought and obtained (over timely objection) the benefit of both the subjective and per se definitions in the charge. Because the information did not allege the "per se" theory of intoxication, there was no notice to Appellant of any intent to offer expert evidence of retrograde extrapolation and no opportunity for Appellant to secure an expert to rebut the information. Additionally, although the manner in which a defendant becomes intoxicated is evidentiary,[9] when the State pleads two of three methods of proving intoxication, analogizing to the "familiar canon firmly grounded in Texas jurisprudence . . . the rule of *expressio unius est exclusio alterius*, reasoning that . . . inclusion of a specific limitation excludes all other limitations of that type,"[10] essentially, the State is informing a defendant that it will not seek to prove intoxication by the third means. This conclusion is particularly important when the excluded method requires expert testimony, and, therefore, to effectively meet and dispute the evidence of the State's expert, a defendant

---

[8]257 S.W.3d at 256.

[9]*See id.*

[10]*Christian v. State,* 286 S.W.3d 63, 66 (Tex. App.—Texarkana 2009, pet. ref'd) (footnote omitted).

8

must rely on the assistance of an expert and give timely notice of intent to call the expert in order adequately to prepare for trial.[11]

The State can prove intoxication by proving per se intoxication or by proving lack of normal use of mental or physical faculties,[12] both evidentiary matters and not elements of the offense and therefore not required to be pled.[13] But when the State gives specific notice that it will prove one form of intoxication and not the other, the State may be bound by the allegations in the same way that it would be bound if it had provided the same information in response to a discovery request, if to hold otherwise would encourage gamesmanship and trial by ambush.[14] Consequently, we hold that because the information specifically

---

[11] *See Ake v. Oklahoma*, 470 U.S. 68, 77, 105 S. Ct. 1087, 1093 (1985); *Aldrich v. State,* 296 S.W.3d 225, 233 (Tex. App.—Fort Worth 2009, pet. ref'd) (en banc) (citing *Ex parte Briggs*, 187 S.W.3d 458, 466–67 (Tex. Crim. App. 2005), in which the court granted habeas relief on ineffective assistance of counsel grounds because trial counsel failed to investigate or obtain experts for economic reasons, not as trial strategy, and holding that Aldrich's trial counsel wrongly believed that he had no duty to complete any independent investigation); *see generally Mata v. State,* 46 S.W.3d 902, 917 (Tex. Crim. App. 2001) (holding that the trial court abused its discretion by admitting the State's evidence of retrograde extrapolation).

[12] Tex. Penal Code Ann. §§ 49.01(2), 49.04(a) (West 2011).

[13] *Barbernell*, 257 S.W.3d at 256.

[14] *See, e.g., Panetti v. Quarterman*, 551 U.S. 930, 932, 127 S. Ct. 2842, 2846 (2007) (holding state court failed to provide Panetti the procedures he was entitled to under the Constitution with respect to his claim that he was incompetent to be executed; notwithstanding his undisputed substantial threshold showing of insanity, the state court on repeated occasions conveyed information to defense counsel that turned out not to be true, provided at least one significant update to the state without providing the same notice to Panetti, and failed to

gave Appellant notice that the State would prove intoxication by proving lack of normal use of his mental and physical faculties, the information failed to provide adequate notice to Appellant that the State would prove per se intoxication. Additionally, because the information specifically gave notice of the State's intent to prove intoxication by lack of normal use of his mental and physical faculties, we hold that Appellant was effectively denied notice of the charges ultimately leveled against him in the jury charge, and, correspondingly, that the jury charge erroneously expanded the scope of the charges against him by incorporating the per se definition of intoxication.[15]

We further hold that the trial court erred by including the per se definition because the evidence does not support such inclusion. In *Cook*, the Texas Court

provide him with an adequate opportunity to submit expert evidence in response to the report filed by the court-appointed experts); *Pope v. State,* 207 S.W.3d 352, 360 n.28 (Tex. Crim. App. 2006), *cert. denied*, 549 U.S. 1350 (2007); *State v. Moff,* 154 S.W.3d 599, 603 (Tex. Crim. App. 2004); *Jaubert v. State,* 74 S.W.3d 1, 4–5 (Tex. Crim. App.) (Cochran, J., concurring) ("[T]he letter of the law is not always a perfect reflection of the spirit of the law, . . . [which] is to ensure that Texas criminal proceedings are not a contest of clever gamesmanship or trial by ambush. There is very little formal pretrial discovery mandated in Texas criminal proceedings, but our Rules of Evidence are drafted to ensure that Texas criminal practitioners remain gentlemen and gentlewomen who do not spring evidentiary surprises on their adversaries."), *cert. denied*, 537 U.S. 1005 (2002).

[15] *See Otto v. State,* 273 S.W.3d 165, 170–71 (Tex. Crim. App. 2008) (holding that the jury charge may not enlarge the offense alleged and authorize the jury to convict on a basis or theory permitted by the jury charge but not alleged in the indictment); *Reed v. State*, 117 S.W.3d 260, 265 (Tex. Crim. App. 2003); *Abdnor*, 871 S.W.2d at 738; *Castillo v. State*, 7 S.W.3d 253, 258–59 (Tex. App.—Austin 1999, pet. ref'd); s*ee also Webb v. City of Dallas,* 211 S.W.3d 808, 820 (Tex. App.—Dallas 2006, pet. denied).

of Criminal Appeals held that "it is error for a trial judge to not limit the definitions of the culpable mental states as they relate to the conduct elements involved in the particular offense."[16]  Applying that rule here, we would hold that it is error for a trial judge to not limit the definitions of intoxication to the facts before the court. But we do not need to so tax ourselves, because, as the Texas Court of Criminal Appeals has explained since *Barbernell*,

> Under the Texas DWI statute, intoxication may be proven in either of two ways: (1) loss of normal use of mental or physical faculties or (2) alcohol concentration in the blood, breath, or urine of 0.08 or more.  The first definition is the "impairment" theory, while the second is the "per se" theory.  They are not mutually exclusive, and, as long as *there is evidence that would support both definitions,* both theories are submitted in the jury charge.[17]

In *Mata*, the Texas Court of Criminal Appeals explained, "Retrograde extrapolation is the computation back in time of the blood-alcohol level—that is, the estimation of the level at the time of driving based on a test result from some later time."[18]  The court noted that a particular absorption rate depends on a variety of factors, including, *inter alia*, food in the stomach, gender, weight, age, amount consumed, and period of consumption.[19]  The Texas Court of Criminal

---

[16]884 S.W.2d at 491.

[17]*Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010) (citations omitted) (emphasis added).

[18]46 S.W.3d at 908–09.

[19]*Id.* at 909–10.

Appeals also noted that the scientific community is divided over whether retrograde extrapolation is reliable.[20]

In the case now before this court, Dr. Springfield offered testimony of retrograde extrapolation over objection, yet lacked vital information necessary to an accurate extrapolation result: the period of consumption, whether food was in the stomach, and an accurate assessment of the amount consumed.

Dr. Springfield opined that at the time Appellant was driving, his BAC alcohol level was above .08. Yet Dr. Springfield also candidly admitted that, rather than being "widely accepted in the scientific community," extrapolation is the subject of controversy in the scientific community. She testified that "[o]ne has to have certain information available in order to make a reliable extrapolation. Otherwise, there are too many assumptions that are made. It may not be credible in a particular instance that's being considered."

Dr. Springfield was then given certain assumptions, and her response to certain assumptions was that the BAC was at .08 or below. When given other assumptions, she concluded that the BAC would definitely be greater than .08.

She also testified that, although in her opinion a person began losing normal use of mental or physical faculties at a BAC of .04, "when someone has a .10 alcohol level in their body," he or she would not necessarily show signs of intoxication. Dr. Springfield also testified that such a person would appear

---

[20] *Id.* at 910.

12

intoxicated to only 50% of people observing them. Does this mean that the observed person has or has not lost the normal use of his or her mental or physical faculties?

Additionally, as in *Mata*, the State did not offer evidence of the reliability of Dr. Springfield's retrograde extrapolation testimony that Appellant's BAC was .08 at the time he was operating the motor vehicle and did not dispute her testimony that under another set of assumptions, it was below .08. Indeed, Dr. Springfield did not testify that the reliability of extrapolation was widely accepted in the scientific community. She testified that extrapolation was not widely accepted in the scientific community, was controversial, and was reliable only if certain information, which she did not have, was available. Her conclusion that Appellant's BAC was .08 or above was dependent on speculative assumptions provided to her and not on actual evidence.

When asked if she could use the evidence contained in the record (time of driving, time of blood draw, and a BAC result of .07) to "figure out what the alcohol concentration was at the time of driving," Dr. Springfield replied, "Yes. There are some ways of doing that, but . . . I would need other information." The State then provided various hypothetical situations that Dr. Springfield testified would definitely result in a BAC of above .08.

Although Dr. Springfield testified that she could state unequivocally that a person who was 6'1", weighed 140 pounds, had had his last drink at 1:00 a.m., and had stated that he had one or two bourbon and Cokes would have had a

13

BAC of above .07 before the police stopped him at 2:06 a.m. if that person also registered a .07 BAC at 4:01 a.m., she also testified to the contrary. "When I say that it would take three to four drinks of that kind to reach a .07, I'm saying if you could *take the alcohol and put it directly into somebody's bloodstream . . . ."* [Emphasis added.]

Then the defense added consumption of food to the hypothetical situations posited originally by the State:

> Q:  . . . [I]f someone had—over a three-hour period had a bourbon and Coke in the first hour, ate dinner, and then had another bourbon and Coke? Would that change how you—
>
> A:  Yes.
>
> . . . .
>
> A:  Well, if you made a measurement two hours later, the alcohol would be virtually zero.

In discussing the controversy about extrapolation, Dr. Springfield stated, "Um, there is controversy about [extrapolation]. One has to have certain information available in order to make a reliable extrapolation. Otherwise, there are too many assumptions that are made. It may not be credible in a particular instance that's being considered." She then assumed that she had all the information, but she testified that the results were affected by food absorption and elimination, information that the record does not reflect that she had. Nor did she know the amount of alcohol content in any drink that Appellant consumed. We therefore hold that the trial court additionally erred by including the "per se"

14

theory of intoxication in the definition of intoxication provided in the jury charge because there was no properly admitted evidence of it under the requirements of *Daubert* and *Kelly.*[21]

## III. Harm

Error in the charge, if timely objected to in the trial court, as this error was, requires reversal if the error was "calculated to injure the rights of [the] defendant," which means no more than that there must be *some* harm to the accused from the error.[22] In other words, a properly preserved error will require reversal as long as the error is not harmless.[23] In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."[24]

---

[21] *See Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 590, 593–94, 113 S. Ct. 2786, 2795, 2796–97 (1993); *Kelly v. State,* 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).

[22] Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); *Abdnor,* 871 S.W.2d at 731–32; *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see also Barrios v. State,* 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) ("A claim of jury-charge error is reviewed using the procedure set out in *Almanza.*").

[23] *Almanza,* 686 S.W.2d at 171.

[24] *Id.*; *see also Ovalle v. State,* 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

The evidence of guilt was conflicting. The videotape of the arrest contradicted some of Officer Anderson's written statements in his report. Appellant did not stumble, and his speech was not slurred. Although acting nervous has been held to contribute to reasonable suspicion to detain a person,[25] here, Officer Anderson testified that Appellant was not nervous, and Officer Anderson believed that the absence of nervousness was a suspicious circumstance.

The videotape does not reveal whether Appellant was intoxicated at the time he operated a motor vehicle, nor does it reveal that Appellant was intoxicated at the time the videotape was made.

Further, the rest of the jury charge is problematic.[26] The trial court improperly instructed the jury on how it was to consider evidence of marijuana. Although Officer Anderson found a marijuana leaf and said that he smelled marijuana on Appellant's breath, no blood test was conducted to determine whether there was any marijuana in Appellant's blood stream or, if so, how much. Further, there was no evidence that the amount of marijuana in Appellant's system, if any, would have a certain or, indeed, any effect on the action of alcohol in Appellant's system. "Texas courts are forbidden from instructing the jury on any presumption or evidentiary-sufficiency rule that does not have a

---

[25] *See, e.g.*, *Balentine v. State*, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002).

[26] *See McClinton v. State*, 121 S.W.3d 768, 769 (Tex. Crim. App. 2003) (Cochran, J., concurring).

16

statutory basis.  Such an instruction is an improper comment on the weight of the evidence."[27]

Additionally, the application paragraph improperly allowed the jury to convict if they found that Appellant was intoxicated as a result of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of these substances.  There was no evidence from any source of the presence of any drug or dangerous drug in Appellant's system at the time he drove or at any time after he was detained.  There was, therefore, no evidence to support that instruction or to support a conviction on that basis.[28]  When the evidence is insufficient to support a conviction, the trial court should eliminate that theory of conviction from the jury's consideration and not include it in the charge.[29]

Accordingly, applying the test required by *Almanza*, we hold that Appellant suffered some harm from the trial court's erroneous definition of intoxication in the jury charge.  We sustain his sole issue.

---

[27] *Kirsch,* 306 S.W.3d at 747 (citing *Brown v. State*, 122 S.W.3d 794, 799–800 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 938 (2004)).

[28] *See, e.g.*, *Otto,* 273 S.W.3d at 169–70.

[29] *Griffin v. United States*, 502 U.S. 46, 60, 112 S. Ct. 466, 474 (1991); *Payne v. State*, 194 S.W.3d 689, 698 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *see also Guevara v. State*, 191 S.W.3d 203, 206–08 (Tex. App.—San Antonio 2005, pet. ref'd).

## IV.  Conclusion

Having sustained Appellant's sole issue, we reverse the trial court's judgment and remand this case to the trial court for a new trial.

/s/ Lee Ann Dauphinot

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

MCCOY, J. concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 28, 2011

18