**Affirmed and Opinion Filed June 26, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01677-CV

## NINE SYLLABLES, LLC, Appellant
### V.
## GARY C. EVANS, Appellee

On Appeal from the 14th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC12-10225-A

## MEMORANDUM OPINION
Before Justices Francis, Lang, and Stoddart
Opinion by Justice Stoddart

This is an appeal from a take nothing and declaratory judgment rendered by the trial court following a bench trial. The trial court ordered that Nine Syllables, LLC (Nine) take nothing on its counterclaim against Gary C. Evans and declared the promissory note and deed of trust securing it, the subject of Nine's counterclaim, were uncollectable and unenforceable by Nine.

The dispute arises out of a revolving line of credit note (Note) signed by Gary and his former wife, Jacque E. Evans.[1] The Note was secured by property (Property) owned by Gary and Jacque and later used for their home. Claiming the Property was her homestead, Jacque later enjoined the lender's attempts to foreclose on the Property when the Note went into default

---

[1] Jacque E. Evans married Guy Gilliland after her divorce from Gary. We use their first names to avoid confusion.

during the divorce proceedings.

After Jacque and Gary divorced, Nine, a company formed by Jacque and her new husband, acquired the Note and deed of trust and demanded payment from Gary. Gary then filed this suit seeking a declaratory judgment that the Note and deed of trust were unenforceable against him because Nine was bound by judicial estoppel from asserting the Note and lien were valid. The judicial estoppel was based on Jacque's repeated sworn testimony that the property securing the Note was her homestead and her attorneys' argument that the Note and lien were unenforceable under the forfeiture provisions of the home equity loan amendment to the Texas Constitution.

Nine raises four issues on appeal, arguing: (1) the Property was not homestead when Jacque and Gary purchased it in 2001 or when they refinanced it in 2002; (2) the Note is not subject to forfeiture under the home equity loan provision of the constitution; (3) Jacque did not contend in prior litigation that the Note was subject to forfeiture and did not make a sworn statement that would give rise to judicial estoppel; and (4) Nine is not bound by Jacque's statements in the prior suit.

We conclude the trial court correctly found that Nine is in privity with Jacque and judicially estopped from asserting the Note is enforceable in light of Jacque's sworn testimony that the property was her homestead and her successful position in prior litigation that the Note and lien were unenforceable. We affirm the trial court's judgment.

## BACKGROUND

In 2002, during their marriage, Jacque and Gary signed the Note, which was payable to Compass Bank. The Note was secured by a deed of trust on property in Denton County they bought two years earlier. The deed of trust contained a disclaimer that the Property was the homestead of the borrowers. Although they lived in another house at the time, Gary and Jacque

–2–

bought the Property intending to build their home there. According to Gary's testimony, the entire balance of the Note, $2,090,000, was drawn and used to pay the previous loan secured by the Property. At the time the Note was signed, they had begun constructing improvements on the Property, including a large stone fence, but did not move in until 2007 when the main house[2] was substantially complete.

Later in 2007, Jacque filed for divorce in Denton County and Gary moved out of the house on the Property. In 2009, while the divorce case was pending, Compass claimed the Note was in default and posted the Property for a foreclosure sale in September 2009. Jacque joined Compass as a party to the divorce case and sought an injunction to stop the foreclosure.[3] In an unsworn petition,[4] Jacque alleged the Property was her homestead and she would suffer irreparable harm if Compass were allowed to foreclose. Jacque obtained an agreed temporary restraining order to stop the September posting. She later obtained another agreed temporary restraining order to stop an October 2009 posting.

Before the temporary injunction hearing, Jacque filed a supplemental petition alleging the Property was her homestead and the Note and lien were unenforceable under the home equity amendment to the constitution.[5] At that time, the home equity amendment did not permit a home equity lien against the homestead in the form of a revolving line of credit. Jacque alleged the Note and lien were an impermissible lien against her homestead and "the penalty for an illegal

_____

[2] Jacque testified at the temporary injunction hearing that the main residence was about 20,000 square feet and they spent approximately $18 million on improvements to the Property.

[3] The lawsuit against Compass was later severed into a separate action, which we refer to as the Compass Lawsuit.

[4] Although the injunction was sought against Compass, a third party, the parties apparently proceeded as if the temporary restraining orders and temporary injunction were injunctions entered under Subchapter F of Chapter 6 of the family code and sworn pleadings were not required. *See* TEX. FAM. CODE ANN. § 6.503; *contra* TEX. R. CIV. P. 682 (no writ of injunction shall be granted without petition verified by affidavit). See TEX. R. CIV. P. 680, 682 (no writ of injunction shall be granted unless the applicant presents his petition to the judge verified by his affidavit).

[5] TEX. CONST. art. XVI, § 50(a)(6) (2003). Unless otherwise noted, all references herein are to the version of the home equity amendment as it existed at the time the Note and deed of trust were signed.

–3–

and invalid home equity lien at the time of the inception of the [Note] and Compass Bank lien is for forfeiture of all principal and interest due under the loan agreement." Jacque requested a declaratory judgment that the Note and lien were void because the Property was her homestead before the inception of the loan.

At the temporary injunction hearing, Jacque testified that the Property was her family's homestead before they moved to the Property in 2007 and she never abandoned the homestead. Based on the testimony and arguments of counsel, the Denton County trial court granted a temporary injunction in December 2009 enjoining Compass from foreclosing on the Property.[6]

Compass then filed a suit in Dallas County against Jacque and Gary to collect the Note. This suit was transferred to Denton County and consolidated with the Compass Lawsuit. Afterwards, Compass filed a motion for summary judgment seeking to dissolve the temporary injunction and allow foreclosure on the Property. Compass asserted the Property was not Jacque's homestead when the Note and lien were executed. In response, Jacque filed her affidavit stating that from the time Gary began designing the home on the Property, "we both fully intended it to be our permanent homestead. This was true when we broke ground on our homestead, when construction began, and when we entered into the loans with Compass Bank which are the subject of this suit and motion." Jacque also stated she never intended to waive her homestead rights in the Property and did not know about the disclaimer of homestead in the deed of trust securing the Note. She said she would not have signed the deed of trust had she been told it contained a waiver of homestead rights. The Denton County court denied the motion for summary judgment.

In her deposition, Jacque continued to maintain that the Property was her homestead at

---

[6] The trial court found there were fact questions as to whether the Property was homestead at the time of the loan and whether the Note and deed of trust created "a valid debt or lien secured by the Property."

the time the Note and deed of trust were signed. She also testified she could not think of a reason why she was not liable for the amount due on the Note.

The divorce decree was signed in March of 2011. Pursuant to the decree and an agreement incident to divorce, Jacque was awarded the Property and Gary was required to pay the Note.

Compass filed a second motion for summary judgment seeking to recover on the Note and to dissolve the temporary injunction. Shortly after the motion was filed, the parties entered into a mediated settlement agreement where Gary agreed to pay the Note. Gary made two interest payments to Compass under this agreement, but did not pay the Note in full.

Jacque filed a response to Compass's second motion for summary judgment and swore in her affidavit that the Property was her homestead prior to execution of the Note and deed of trust. Jacque's response argued she was not responsible for payment of the Note because the terms of the divorce decree required Gary to pay the Note and to indemnify and hold Jacque harmless from payment of that debt. In her affidavit, Jacque relied on her homestead testimony to qualify her deposition answer regarding her liability on the Note.[7] Jacque also stated in her affidavit that she was not liable on the Note because Gary was the sole person liable for the debt pursuant to the divorce decree.

Shortly after filing the response to Compass's second motion for summary judgment, Jacque married Guy and they formed Nine for the purpose of buying the Note and deed of trust

---

[7] Jacque stated in the affidavit:

At my deposition in this cause, I was asked whether there was any reason why I am not liable on the Loan and Note at issue in this case, and as I had explained just prior to that point, particularly in my deposition from Page 36, line 16 to Page 37, Line 23, I believe that the property . . . has been my one and true homestead since April 2001. Thus, I qualified the response at Page 41, line 12 both at my deposition and in this Affidavit, and I stand by that qualification.

At page 36 of her deposition, Jacque testified the homestead disclaimer in the deed of trust was incorrect and she intended the Property to be her homestead in 2002. At page 41, line 12 of her deposition, Jacque answered "No" to the question, "Is there any reason you think you are not liable for the amount due on the note?"

from Compass. Compass assigned the Note and lien to Nine in August of 2012 and the Compass Lawsuit was dismissed. When Nine demanded payment of the Note from Gary, he filed the present lawsuit seeking a declaratory judgment that the Note and deed of trust were unenforceable. Nine counterclaimed to recover on the Note and debt.

Following a bench trial, the trial court rendered judgment that Nine take nothing on its counterclaim against Gary and declared the Note and the deed of trust were uncollectable and unenforceable by Nine. The trial court signed written findings of fact and conclusions of law in support of its judgment and denied Nine's motion to modify the judgment or for new trial.

## STANDARD OF REVIEW

Findings of fact in a nonjury trial have the same force and dignity as a jury's verdict and may be reviewed for legal and factual sufficiency under the same standards. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Ashcraft v. Lookadoo*, 952 S.W.2d 907, 910 (Tex. App.—Dallas 1997), *pet. denied*, 977 S.W.2d 562 (Tex. 1998) (per curiam). To evaluate the legal sufficiency of the evidence to support a finding, we must determine whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *see also St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 519 (Tex. 2002) (plurality op.). We view the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). As trier of fact, the trial court is the sole judge of the credibility of the witnesses and may believe one witness over another and resolve any conflicts in the testimony. *Shaw v. County of Dallas*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied); *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 917–18 (Tex. App.—Dallas 2008, no pet.).

–6–

We review the trial court's conclusions of law de novo. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Incorrect conclusions of law will not require a reversal if the controlling findings of fact will support a correct legal theory. *Sears, Roebuck and Co. v. Nichols*, 819 S.W.2d 900, 903 (Tex. App.—Houston [14th Dist.] 1991, writ denied).

## ANALYSIS

### A. Judicial Estoppel

Nine's third issue questions the trial court's findings and conclusions regarding judicial estoppel. We begin with this issue.

The doctrine of judicial estoppel "'precludes a party from adopting a position inconsistent with one that it maintained successfully in an earlier proceeding.'" *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008) (quoting, 2 Roy W. McDonald & Elaine G. Carlson, TEXAS CIVIL PRACTICE § 9.51 at 576 (2d ed. 2003)). The doctrine is not strictly speaking estoppel, but rather is a rule of procedure based on justice and sound public policy. *Long v. Knox*, 291 S.W.2d 292, 295 (Tex. 1956). It is not necessary that the party invoking the doctrine was a party to the prior proceeding. *Id.*

The essential function of judicial estoppel "is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage." *Andrews v. Diamond, Rash, Leslie & Smith*, 959 S.W.2d 646, 650 (Tex. App.–El Paso 1997, writ denied); *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (noting basis for estoppel is the assertion of a position clearly inconsistent with a previous position accepted by the court). Its purpose is to protect the integrity of the judicial process by preventing a party from "playing fast and loose" with the court to serve the party's own purpose. *Cricket Commc'ns, Inc. v. Trillium Indus., Inc.*, 235 S.W.3d 298, 304 (Tex. App.—Dallas 2007, no pet.); *Webb v. City of Dallas*, 211 S.W.3d 808, 820 (Tex. App.—Dallas 2006, pet. denied).

Under the doctrine, a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath the contrary to the assertion made. *Long*, 291 S.W.2d at 295. The elements of judicial estoppel are: (1) a sworn, prior inconsistent statement made in a judicial proceeding; (2) which was successfully maintained in the prior proceeding; (3) not made inadvertently or by mistake, or pursuant to fraud or duress; and (4) which is deliberate, clear, and unequivocal. *Andrews*, 959 S.W.2d at 650 n.2. "The applicability of judicial estoppel is not limited to oral testimony, but applies with equal force to any sworn statement—whether oral or written—made in the course of a judicial proceeding." *Miller v. Gann*, 842 S.W.2d 641, 641 (Tex. 1992) (per curiam).

Judicial estoppel is most commonly applied to sworn statements of parties in prior judicial proceedings, but also applies to statements of attorneys explaining their client's position in those proceedings. *Webb*, 211 S.W.3d at 820; *Goldman v. White Rose Distrib. Co.*, 936 S.W.2d 393, 397 (Tex. App.—Fort Worth 1996), *vacated pursuant to settlement*, 949 S.W.2d 707 (Tex. 1997).

In its third issue, Nine argues Jacque did not contend in prior litigation that the Note was subject to forfeiture and she did not make a sworn statement that would give rise to judicial estoppel. We reject both arguments.

First, Jacque's supplemental petition in the Compass Lawsuit contended the Note and lien created an impermissible lien against her homestead and alleged "the penalty for an illegal and invalid home equity lien at the time of inception of the [Note] and Compass Bank lien is for forfeiture of all principal and interest due under the loan agreement." Jacque specifically requested a declaration from the court that "the [Note] and the Compass Bank Lien are invalid, void and of no consequence because the Property is and has been the homestead of [Jacque] prior to the inception of each document." The record does not indicate this pleading was ever

amended or withdrawn. Thus, the record supports that Jacque did contend in the prior litigation that the Note was subject to forfeiture.

Second, Jacque made several sworn statements that the Property was her homestead. Those statements provided the factual basis for her contention, through her attorneys, that the Note was subject to forfeiture. Jacque testified at the temporary injunction hearing that the Property was her homestead and the Denton County trial court granted the temporary injunction. Based on this testimony, the court granted the temporary injunction and found there was a question of fact as to when the homestead was established on the Property. The recitals in the temporary injunction also indicate Jacque convinced the Denton County trial court there was a substantial question of fact about whether the Note and deed of trust created a valid debt or lien secured by the Property. Jacque also swore in her affidavits in response to Compass's motions for summary judgment and in her deposition that the Property was her homestead.

Although the Compass Lawsuit was later dismissed, Jacque succeeded in preventing Compass from foreclosing on the property and collecting on the Note for approximately three years. *See Long*, 291 S.W.2d at 295 (husband successfully maintained position in prior lawsuit that property was his wife's separate property even though prior suit was dismissed and restraining order expired). The record indicates Jacque made sworn inconsistent statements in a prior judicial proceeding, which were successfully maintained in that proceeding. The repeated statements under oath were deliberate, clear, and unequivocal and there is nothing in the record to support nor does Nine assert that the statements were inadvertent, mistaken, or made pursuant to fraud or duress. Thus the record supports that Jacque made sworn statements in a prior judicial proceeding that give rise to judicial estoppel. *See id.*; *Andrews*, 959 S.W.2d at 650 n.2.

Nine argues judicial estoppel does not apply because Jacque's pleadings in the Compass Lawsuit were not sworn. Jacque's live pleading in the Compass Lawsuit alleged the Note and

–9–

lien were subject to forfeiture of all principal and interest as an invalid home equity loan against the homestead. Although this pleading was not sworn, the legal position in the supplemental petition was based on Jacque's sworn testimony that the Property was homestead at the time the Note and deed of trust were signed. Jacque and Nine's position in this lawsuit that the Note and lien are valid is contrary to Jacque's position in the Compass Lawsuit.

The estoppel in this case is not based solely on Jacque's pleadings in the prior lawsuit. The estoppel arises from Jacque's sworn testimony and her position, as alleged by her attorneys in the supplemental petition, that the Note was subject to forfeiture of all principal and interest. An attorney's position can bind his client and estoppel applies to statements by an attorney explaining the client's position. *See Webb*, 211 S.W.3d at 820 (judicial estoppel applies to statements of attorneys explaining client's position in litigation); *Goldman*, 936 S.W.2d at 398 (client's testimony together with counsel's arguments were enough to show client was taking inconsistent position in first lawsuit from position in second lawsuit).

Nine also argues that allowing judicial estoppel in this case leads to an inequitable result. Nine contends the result is inequitable because it was Gary who moved out of the house and stopped supporting Jacque. Jacque had to sue Compass to stop the foreclosure and "keep a roof over her family's head." Nine asserts Gary did not pay the Note as the divorce decree required or as he agreed in the mediated settlement with Compass.[8] Nine claims that if it is not allowed to collect on the Note, the result will be "unfair by any measure." Gary responds that judicial estoppel cannot be avoided by vague notions of equity.

Even if application of judicial estoppel is equitable in nature, Nine has failed to show the trial court abused its discretion by applying the doctrine under the facts of this case. *See Wagner*

---

[8] Undercutting its arguments against privity, Nine focuses here on the supposed equities between Jacque and Gary. Nine does not identify any equities in its favor other than those allegedly favoring Jacque.

–10–

*& Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 428–29 (Tex. 2008) (expediency, necessity, or propriety of equitable relief is for the trial court, and its ruling is reviewed for an abuse of discretion). Based on the record in this case, the trial court could have reasonably concluded that equity favors neither side in this litigation. Jacque, through her newly formed entity, Nine, is attempting to avoid the obvious consequences of her previous sworn testimony that the Property was her homestead. Gary is attempting to avoid his agreement to pay the debt in the agreement incident to divorce and the mediated settlement agreement. The trial court could reasonably conclude that neither party was entitled to benefit of equity. We conclude that Nine has not shown the trial court abused its discretion by rejecting Nine's equitable arguments against judicial estoppel.

We reject Nine's arguments and conclude the evidence is sufficient to support the trial court's findings of fact regarding judicial estoppel. The trial court's conclusions of law correctly support the application of judicial estoppel in this case. We overrule Nine's third issue.

## B. Privity

Nine's fourth issue asks whether Nine is bound by Jacque's statements in the Compass Lawsuit. This issue challenges the trial court's findings and conclusions that Nine is in privity with Jacque. Nine contends there is no evidence that Jacque was a managing member of Nine and that the trial court abused its discretion by excluding Guy's proffered testimony that his interest in Nine came from his separate property.

In the pretrial order, the parties agreed that people can be in privity in at least three ways: (1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1992); *see also Long*, 291 S.W.2d at 297 (daughter was judicially estopped by father's

sworn pleading because she was in privity with him). The parties also stipulated that Jacque and Guy formed Nine for the purpose of purchasing the Note and deed of trust from Compass and that Jacque was fully authorized by Nine to sign the note purchase agreement with Compass by which Nine acquired the Note and deed of trust. The evidence is undisputed that Jacque and Guy are the sole owners of Nine, with Guy owning 70% of the company and Jacque the remaining 30%.

The trial court found that Jacque, as a managing member of Nine, controlled Nine's actions in this lawsuit and approved, authorized, and directed Nine to purchase the Note from Compass. Jacque testified she was a managing member of Nine.[9] The stipulations indicate Nine was formed by Jacque and Guy for the purpose of buying the Note and deed of trust from Compass and that Jacque was fully authorized to sign the agreement to purchase the Note on behalf of Nine. There is also evidence that Jacque, on behalf of Nine, retained the attorneys representing Nine in this litigation. We conclude there is more than a scintilla of evidence that Jacque is a managing member of Nine and that she approved, authorized, and directed Nine's purchase of the Note and deed of trust. Because the evidence is sufficient to support the finding that Jacque controls Nine and that finding is sufficient to support the conclusion on privity, we need not address the other bases for privity.

Regarding the exclusion of Guy's testimony, Nine's counsel asked Guy where he obtained the money for his investment in Nine. When the trial court asked how that information would be helpful, Nine's counsel offered that he intended to respond to the privity argument by showing that Guy's majority investment had come from his separate property. The trial court excluded the testimony because no argument had been raised regarding the source of the funds

---

[9] On cross-examination, Jacque was asked and responded: "Q. You are a managing member of Nine? A. Yes."

for the investment in Nine.

We review the trial court's evidentiary rulings for an abuse of discretion. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *Dallas County v. Crestview Corners Car Wash*, 370 S.W.3d 25, 35 (Tex. App.—Dallas 2012, pet. denied). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

On this record, we cannot say the trial court abused its discretion by excluding Guy's testimony about the source of his investment in Nine. There is nothing in the record to indicate Gary alleged or argued Nine was in privity with Jacque because Guy's interest in the company was community property. Thus, the trial court could have concluded that whether Guy's investment was from community or separate property is not a fact of consequence to the determination of the action and therefore not relevant. *See* TEX. R. EVID. 401, 402.

The evidence supports the findings and the trial court's conclusion that Nine is in privity with Jacque and the trial court did not abuse its discretion by excluding Guy's testimony. We overrule Nine's fourth issue.

## C. Homestead

Nine's first issue asks whether the Property was Gary and Jacque's homestead at the time they purchased it or when they signed the Note and deed of trust. However, because we have concluded the trial court correctly determined that Jacque is estopped from denying the homestead status of the Property and Nine is in privity with her, Nine is also estopped from questioning whether the Property was homestead. We overrule Nine's first issue.

## D. Forfeiture of Debt

Nine's second issue asks whether the Note is subject to the forfeiture provisions of the home equity amendment to the constitution. Nine contends the Note and lien are enforceable

even if the Property was homestead because the Note was a refinance of a prior purchase money lien against the Property. Gary asserts this issue was never raised in the trial court and is not preserved for appeal.

Nine claims on appeal the Note and lien are enforceable as a refinance of a valid purchase money lien against the homestead. *See* TEX. CONST. art. XVI, § 50(a)(4). However, the record does not show this complaint was ever presented to the trial court. It is not alleged in Nine's live pleadings, nor in the contested or agreed issues of fact and law in the rule 166 pretrial order. TEX. R. CIV. P. 166. It was not raised during argument at trial, by pretrial or post-trial motion, or by requested findings of fact or conclusions of law. Nor are the specific grounds for the argument apparent from the context of Nine's arguments in the trial court. TEX. R. APP. P. 33.1(a)(1)(A). Thus, Nine's complaint on appeal does not comport with the argument raised in the trial court and is not preserved for review. TEX. R. APP. P. 33.1(a); *Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 170 (Tex. App.—Dallas 2009, no pet.) ("To preserve an error for appeal, a party's argument on appeal must comport with its argument in the trial court.").

Further, even if Nine raised the argument below, it would be barred by judicial estoppel. Jacque consistently argued the lien was not enforceable because the Property was her homestead. She obtained an injunction preventing Compass from foreclosing the lien on this basis. Judicial estoppel binds her and Nine from now arguing that in fact the lien was valid even if the Property was Jacque's homestead. Jacque, through her attorneys, took the position based on her sworn testimony not only that the lien was invalid, but the Note and debt were forfeited under the home equity amendment of the constitution. Because we have affirmed the trial court's ruling on this issue, we need not address whether the loan was in fact a home equity loan.[10] We overrule Nine's

---

[10] We do not hold that the Note was a home equity loan. We uphold the trial court's judgment on the basis of judicial estoppel. Estoppel closes the mouth of the estopped party; it does not make the prior action valid. *Nicholson v. Mills*, 227 S.W.2d 354, 356 (Tex. Civ. App.—Galveston 1950, writ ref'd) ("estoppel does not make

second issue.

### E. Other Arguments

Although not referenced in its issues[11] on appeal, Nine's brief raises two other contentions: Gary does not have standing to seek a declaration regarding the validity of the deed of trust, and we should reverse and render judgment for Nine on the Note.

Gary was a signatory to the deed of trust. As such, he is potentially bound by the many covenants in that instrument even if he no longer owns an interest in the Property. As a signatory to the instrument, Gary has sufficient interest in the dispute to confer standing on him. *See  Sneed v. Webre*, No. 12-0045, 2015 WL 3451653, at *7 (Tex. May 29, 2015) ("The general test for standing in Texas requires that there '(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought.'") (quoting *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (quoting *Bd. of Water Eng'rs v. City of San Antonio*, 155 Tex. 111, 283 S.W.2d 722, 724 (Tex. 1955))); *Denmon v. Atlas Leasing, LLC*, 285 S.W.3d 591, 597 (Tex. App.—Dallas 2009, no pet.) (former wife had standing to assert mechanic's lien contract was void under homestead law because ex-husband did not sign the contract during the marriage). We reject Nine's standing argument.

Because we have affirmed the trial court's judgment that Nine take nothing on its claim, we reject Nine's request for rendition of judgment on the Note.

### CONCLUSION

We conclude the trial court correctly found that Nine is in privity with Jacque and judicially estopped from asserting the Note is enforceable in light of Jacque's sworn testimony

---

valid the thing complained of, but merely closes the mouth of the complainant") (citations omitted).

[11] Nine's brief does not clearly identify what arguments relate to the issues raised on appeal. To the extent the arguments in the brief do not relate to an issue or a subsidiary question fairly included in an issue, they are inadequately briefed and present nothing for review. *See* TEX. R. APP. P. 38.1(f), (i).

that the Property was her homestead and her successful position in prior litigation that the Note and lien were unenforceable. We affirm the trial court's judgment.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

131677F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

NINE SYLLABLES, LLC, Appellant

No. 05-13-01677-CV      V.

GARY C. EVANS, Appellee

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC12-10225-A.
Opinion delivered by Justice Stoddart.
Justices Francis and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee GARY C. EVANS recover his costs of this appeal from appellant NINE SYLLABLES, LLC.

Judgment entered this 26th day of June, 2015.